Thank you, Your Honor, and may it please the Court. I hope to focus on three major points this morning. The first is that the plain language of the FDIC statute, which establishes the statute of limitations for any action by the FDIC shall be no less than three years for any tort, provides a comprehensive and exclusive time limitation for actions by the FDIC. The second point is that nothing in the CTS decision, which analyzed a surplus statute regarding claims by private parties that explicitly directed state law should generally govern, nothing in that decision affects the outcome of the FDIC statute providing the exclusive time limitation. After the CTS decision, as I understand it, the Supreme Court sent back the Nomura case and the Tenth Circuit agreed with you, is that right? That's correct, Your Honor. So we would be creating a circuit split post-CTS if we were to go the other way, is that right? That's correct, Your Honor. Only two appellate courts have had occasion to issue opinions since, but both of the appellate courts issuing opinions since CTS, the Tenth Circuit and also Nevada's Supreme Court sitting on Bank, both of those courts understood CTS not to change it, and I can, I think, demonstrate to the Court why CTS doesn't have the effect that the securitizers urge. What is the status of the litigation in the Second Circuit? There are appeals. District courts within the Second Circuit took different approaches to the application of CTS, and at least one district court in a couple of decisions came out effectively overruling their circuit law in UBS, citing CTS, and those cases are on appeal. They're to be argued on October 8th, or at least one of them is if they're not. There might be a circuit split. We don't know if they follow the district court opinion in the Second Circuit soon anyway. We don't know. We don't know, but we do know the Second Circuit has already visited this statute and found that the plain language unambiguously created the exclusive time period for the statute, and again, some of the words that indicate that it's the exclusive time period, it describes itself as the applicable statute of limitations with regard to any action brought by the FDIC as conservator or receiver, and then provides that that time shall be either 6 years for contracts or 3 years for tort, and that applies to any tort claim brought by the FDIC as receiver. Every appellate court that's considered the language has found identically that it's comprehensive and it's the exclusive statute establishing limitations on FDIC's time to bring actions, and that's the natural reading of these words. They preclude the possibility that another limitations period might apply. That phrase, the statute of limitations, describes what's created for the agencies, and this is a statute not only of the FDIC, but the same language is shared by the NCUA and the FHFA, and in cases considering this language, they've always concluded that it's exclusive, it's the only statute governing the time for bringing any action. It also explicitly discusses the role that state law plays with regard to actions brought by the FDIC because it specifically addresses state law. It says when state law provides a later commencement date or when state law provides a longer period to bring an action, then state law will be borrowed for the federal statute. So having expressed the state law's relationship and role in any action brought by the FDIC, standard rules of construction should foreclose any conclusion that Congress intended some other implicit limitations period to apply in this case. The way the Second Circuit described that is with this plain language, it just doesn't allow for an opaque limitations periods for repose, and I would prefer the phrase the Supreme Court's used. Congress doesn't hide elephants in mouse holes. When Congress addresses this statute and talks about state law and describes any action and the statute of limitations that shall apply, Congress isn't in the business of hiding some other statute that might somehow operate. Tell us then explicitly how you think the circle of statute that was construed in CTS is different in the respect that it would matter for this case. It's different in at least four major respects. The starting point for the CTS analysis is the use of the words statute of limitations by Congress isn't dispositive. Statute of limitations when used by Congress can and has included statutes of repose. So that's the starting point from which the Supreme Court determined in CTS that it had to examine the text, the structure, the purpose, and the history of that statute to determine what applied, and here are the major differences. From the outset, CTS, the circle of statute, involved private litigants. It explicitly established that state law was the general rule. It explicitly called the federal adjustment an exception. The FDIC statute, on the other hand, is not for private litigants. It does not create a general rule with exceptions. It's the statute for any action, and it's not built or based on state statutes. Rather, as the SMS decision from this Court explained, it's really an expansion of the general six-year, three-year statute of limitations that applies to agencies of the government generally. The second difference between CTS and our case is that the exception here adjusts in CTS adjusted only the commencement date and only for some actions. The state period of limitations continued to apply in that case. In FDIC's statute, it provides a comprehensive period for any action, and federal time will only borrow a state law action if it's longer and if it commences later. The other differences are that the only state element that was adjusted in CTS was the applicable limitations period, which was in the singular, in which a civil action may be brought,  The FDIC statute uses much broader language. All the elements are adjusted, enlarged, and enhanced. It enhanced 28 U.S.C. 2415, the general statute, and it applied to any action. And the history also revealed in CTS that Congress had specifically ordered a report as to what states could do and what changes could be made to achieve the purposes Congress was looking at. That report came back and explicitly distinguished between periods of limitation and periods of repose. And with that report in front of it, Congress in CERCLA then went ahead and did not make the distinction that was made by the report that it had ordered. And, of course, that left state laws the general rule, which they explicitly said, and the Supreme Court found that you would therefore look very specifically at whether anything fell under the exception, and you had to look at the exception in a very narrow way, as opposed to the incredibly broad language of any action, any tort, any contract action that exists in the FDIC's case. And there was no rule. So Congress rejected the recommendation to include both and specifically only included the one. That's correct, Your Honor. And that's not the case. We have no such report here. As I said, CTS acknowledges that using the word statute of limitations doesn't dispose of anything because Congress uses statute of limitations to include both. As the briefs show, it's done so repeatedly since the enactment of FIREA. And we should consider what FIREA, the climate in which FIREA was enacted, which was in the middle of the savings and loan crisis, which also included a heck of a lot of banks, there was a crisis in place and Congress very consciously expanded the period that was available for the FDIC to bring its claims. And it settled a circuit split. The courts were split on whether the commencement date under 2415 began with accrual under state law or began with the appointment of the receiver. The FDIC's statute in FIREA makes clear that the earliest time that a statute of limitations can run is with the appointment of the receiver. So it clarified that split as well. A contrary reading, as I understand it, could mean that the time period for suit could run one or two or three days after the FDIC is appointed. Is that right? That's correct, Your Honor. It would entirely frustrate the purpose of the statute. The FDIC doesn't step into failed banks with all of the records in front of it ready to make a call on what suits it's going to bring. The purpose, which the Barton decision from this court discussed, is to allow the FDIC an adequate time to investigate its claims. We vet our claims. In many cases, the claims are actually presented to the Board of Directors before they're brought. And the FDIC needs time, in some cases, even to find the records. I've had experience with a case where the records of the bank, many of them had been buried by the bankers before the bank failed. So the FDIC needs that time, and that's a very specific purpose that would be frustrated by any other understanding of the statute. It was intended to provide three years at least for the FDIC to investigate and responsibly bring its lawsuits, and that would be frustrated by any contrary interpretation, especially one that would allow a statute of repose to extinguish a claim within a day, a week, a month. That simply doesn't allow the FDIC time to responsibly investigate and bring a lawsuit. I have three questions. In a situation in which the statute of repose killed the cause of action before the receiver is appointed, then what? Does it have to be alive on the date of? It has to be alive on the date that the FDIC has appointed receivers. So any statute of repose that has already killed the goose is honored. That's correct. And that reflects an understanding that dates back all the way to 1940 with the Supreme Court's decision in Summerlin. Summerlin stands for the proposition that when the United States or one of its agencies comes into possession of a claim, in that case, like our case, it was a claim that came into possession of the Federal Housing Administrator under Title XII. State law statutes simply fall away. This Court has also held the same in a number of decisions, which I can provide to the Court. But the Summerlin Court made clear there does have to be a live claim. It's not there to resuscitate. Now, our statute, Congress actually went back to amend and provided the amazing power to resuscitate certain claims, and that's in 1821 D14C, which isn't before the Court here. But as a general rule, the claims have to be alive at the time the FDIC is appointed receiver. And this Court examined that in, I believe, the Belli decision, which is mentioned in our briefs. The way it was described by this Court in United States v. Sellers in applying the Summerlin rule is that where the government acquires a derivative claim, whether by assignment, subrogation, or by other means, and that claim is not then barred by the state statute of limitations, the state statute ceases to run against the government at the time of such acquisition. And that general rule applies here. It certainly demonstrates that the presumption against preemption doesn't apply because the state statute of limitations wouldn't apply once the claim came into the hands of the receiver, in the hands of the Federal Housing Administrator, in the hands of the SBA in other cases, the Farmers Home Administration. In all of those cases, when the claim comes into the hands of the government entity, an agent acting on behalf of the United States, the Federal statute then applies. Have you answered Judge King's question? Yes, it must be alive at the time. Okay, well then I have three questions, please. All right. My first question has to do with how does your understanding of the text comport with the use of tolling in 1821 D5FI? The idea is that it uses the term of tolling of applicable statute of limitations in another provision, in another part of the statute, and there wouldn't be tolling in the repose context. So that would be some indication that Congress meant to use statute of If we're discussing what was created by Congress for the FDIC to apply, that is a statute of limitations. But nothing in the statute or use of tolling for the FDIC's statutory periods and the FDIC's statute of limitations, nothing looks to what was displaced under State law or what was intended by granting the FDIC the comprehensive period. So the use of tolling periods to create statutes of limitations with regard to FDIC periods isn't inconsistent with the notion that Congress created an exclusive time for the FDIC to bring claims. Yes, I don't understand why it's not inconsistent. If Congress knows the difference between statutes of limitation and statutes of repose, and in this statute they chose to use statutes of limitation throughout, and they, in fact, used some tolling language in different parts of the statute, then didn't that tend to mean that they understood how to use the term statute of limitation when they meant to, and that you would give a consistent use throughout the document of the term? Statute of limitations either means both throughout or it means neither, but only one throughout. Respectfully, Your Honor, I think that the CTS decision makes clear that the use of the word statute of limitations isn't dispositive. And if the use of statute of limitations governed the case, we could all go home and you could reverse because Texas describes this statute upon which the securitizers rely as a statute of limitations as well. By creating, in certain circumstances, for filing deadlines with the FDIC a notion of tolling, it may have used statute of limitations to describe a period that operated as a statute of limitations, but there's nothing in the statute to indicate that it had an exclusive view of the word statute of limitations. It has never used the word statute of repose in any statute. Congress uses the word statute of limitations to apply to either period, and the CTS decision supports that. Okay. My second question has to do with the fact that do you agree that Texas declined to create a new cause of action for security violations more than five years old? Right? They declined. Texas declined. And so wouldn't interpreting FOREA in the matter of the FDIC request override the prerogative of the Texas legislature? And even though everybody agrees, I think, that FOREA doesn't intend to create new law, but to preserve state law. But state law, it's more of a theoretical question. With all due respect, I have to disagree with the final proposition that you stated. We cannot agree and the Supreme Court did not agree in the O'Melveny decision that state law governed everything. But do you think it intended to create new substantive federal rights? It intended to displace any contrary time period for the FDIC to bring any claim. And the Summerlin decision of the Supreme Court follows very closely, because in that case, the Federal Housing Administrator came into possession of a claim, and the statute said, if you don't file your claim within eight months, the claim can't be enforced. And what the Supreme Court explained is, in that case, limitations on the time for the government to bring its claims is not, no longer applies to the government, that those limitations periods aren't intended to apply. The limitations periods for bringing claims. Now, I'm sure my friends are. You're acting in this context, are you? You're stepping in the shoes of the bank. You don't get the presumption that the government gets in this context, do you? Yes, we do, Your Honor, for a couple of reasons. The first is that the period that was replaced was not state law. The applicable period for the receiver was 28 U.S.C. 2415. The SMS case discusses that, that the federal statute of limitations applied, and then the FDIC's special statute expanded that federal limitations period. Now, I'm sure that my friends are going to stand up and say, oh, no, it doesn't apply. That was a corporate case. But what SMS is discussing is two things. It's discussing the statutes as they applied, and it makes clear that corporate, FDIC corporate in that case, at I believe it's page 240, but FDIC corporate was borrowing FDIC receiver's statute of limitations. The statute of limitations in D14 explicitly refers to the receiver or conservator. In that case, FDIC corporate was using FDIC receiver's enhanced statutory period, and that's discussed under heading number two in SMS. But if there were any question that 2415 applied to the receiver prior to FIREA, that question was also answered by the Bledsoe decision, which is relied on in SMS. And in Bledsoe, this court held that the receiver was entitled to 2415. 2415 kept alive a claim that otherwise would have expired under state law, and that the FDIC's use of 2415, the receiver's use, even extended to assignees, that it wasn't limited to the receiver using it. It even extended to assignees. Isn't there a problem, a constitutional structural problem, though, also about the presumption against preemption that this, if you're reading, not only expands through the preemptive federal limitations period, but effectively creates a new cause of action where none existed under state law? No, Your Honor. Under the Supremacy Clause, what Congress has done is said that when the FDIC receiver receives a live claim, the period in which the FDIC receiver can bring that claim is not going to be governed by state law unless state law gives it longer than three or six years. And so it stepped in and it said, if there's a live claim, the commencement date for the statute of limitations will begin then, and that state law will only play a role if it's larger. That's what happened in Summerlin. State law said, after eight months, you don't have a claim. And the agency of the United States came back and made its claim well after eight months. And what the Summerlin Court, the Supreme Court, explained is that the state law did not apply. And what this court has said is state laws limiting the time in which to bring the claim simply ceases to apply. So it is well within Congress's power to determine the commencement date for a cause of action, and it has done so here. And in the absence of a limitation on the time that the agency of the United States can bring its claim, state law limitations periods still do not apply. It was Congress's decision to limit the time for the FDIC's receiver to bring its claim or any others. And if I can just answer the point that you made about federal law not applying and FDIC stepping into the shoes, the Supreme Court in O'Melveny made clear that FDIC, even as receiver, is working under a federal statute on a federal deposit insurance scheme to resolve institutions, and Congress created special federal rules of decision. It's only where those special federal rules of decision don't apply and 1821d does in this case, it does apply. And it's only when they don't that Congress is presumed to have intended to fill that in with state law, but not in the case of limitations on the time for the FDIC receiver to bring its claims. And I see my time's run out. Thank you. Yes, and you've saved a short time for rebuttal. Thank you, Your Honor. Thank you. Thank you, Judge Smith, and may it please the Court. I'd like to make a couple of points, starting with your question, Judge Smith. The Tenth Circuit in OMURA II comprehensively analyzed all of these issues with respect to the interplay between CERCLA and the extender statute, but it did so with the benefit of the views of the Department of Justice. The Solicitor General authorized an amicus brief to be filed after CTS. The Solicitor General's position had prevailed in CTS, and the Department of Justice filed an amicus brief saying CTS does not affect the outcome of the Tenth Circuit's original decision in OMURA I. OMURA II comes out with the Tenth Circuit having decided these issues, OMURA petitions for certiorari, and the Solicitor General opposes CERT, making all of the same arguments that we've advanced here. So I would submit that to the extent that you want further briefing on the interplay of these various issues, the Department of Justice has done that comprehensively. Secondly, what the Tenth Circuit held was that the — How do you feel about the argument that the Department of Justice seems to be taking contrasting positions? No, they're different statutes. What the Department of Justice has done is to construe different statutes that have different purposes, different language, different structures. In the CERCLA context, what the DOJ said was that the exception to the general rule was simply an alteration to create a new federal accrual period. State law was the general rule, and if you look at the statutory structure, it's sort of odd because it puts the exception before the general rule. But the general rule is that state law applies. By contrast with the extender statute, federal law is supreme, and it creates the comprehensive limitations period when these federal agencies step into the shoes of failed financial institutions and Judge Smith and Judge King. It's absolutely the case, as your questions noted, that the time is necessary for these agencies to investigate these claims. Now, Judge Elrod, it is not the case that there is a new cause of action being created. It is a simple application of the supremacy clause where Congress made a different policy determination, and it is done against the backdrop of the Summerlin principle. And I would point you to a procurium decision that you were part of, United States v. Evans, in which this was applied in exactly the same way in the tax transfer context. And this Court held in Evans that the period that was described as a repose period was simply displaced because the federal agency was doing the work that Congress had charged it with. That's just classic preemption concept, and it does not affect the way you should analyze the cause of action or the interplay of state law. Now, the other point that I want to make is that the idea of being presumption about the government applying here applies in spades with respect to the National Credit Union Administration because our money is in the Treasury. Treasury had to loan money to keep the credit union system liquid because the credit unions had purchased these toxic mortgage-backed securities from wrongdoers like RBS. And that caused the failure of the five largest credit unions in the country who had been creating the liquidity for the entire credit union system consisting of 100 million normal, hardworking Americans. So the money that we recover in these claims is going to pay down the amount that the NCUA had to borrow from Treasury. Congress made it very clear that is a governmental function. And so to the extent that you would think that any presumption would apply, it ought to be the presumption that the federal government has the tools to go after these wrongdoers to replenish the funds that Treasury has to loan in order to keep the entire system liquid and stable. I want to also point out that your question. Very briefly. Very briefly. 30 seconds. Yes. On your question, Judge Elrod, about Congress knowing the difference between repos and limitations, the Tenth Circuit comprehensively dealt with that question too. What is clear is that repos doesn't appear in the United States Code up until 1989 at all. So that word was always thought to belong to the concept of limitations, and if you look at our brief, there are sources that give you five different definitions of repos, and they all are wrapped into the concept of limitations. I thank the Court for your permission and appreciate it. Thank you, Mr. Frederick. We appreciate your participation as amicus. Mr. Frankel. Good morning. May it please the Court. In terms of the circuit split, Judge Elrod, you're right that this is going to be heard by the Second Circuit shortly in October. It's also going to be heard in the Ninth Circuit as well because courts around the country, after the Tenth Circuit ruled, have disagreed with the Tenth Circuit's Nomura decision and have found that it's just incompatible with CTS. Are you saying we should just sit around and wait for those other circuits to see if there's a split? Absolutely not, Your Honor. I think you ought to look at Judge Sparks' decision here, look at the CTS decision, and this Court should determine for itself whether the plain language does anything more, the plain language of 1821d14, does anything more than extend the statute of limitations for contract and tort claims when the period under the statute is longer than the period under state law. It does nothing more and nothing less than that. Again and again you heard counsel argue that firea was intended to create an exclusive new time period, but that's not what this statute says, not at all. First of all, the Supreme Court and CTS provided these courts, provided the courts with a roadmap for deciding this issue, and all of the same textual evidence applies here. Repeated references to statutes of limitations and not statutes of repose, which at a minimum is instructive. Which in this Court, in the Burlington decision held it was plain language that means what it says. At the time of the enactment of this statute, as I understand it, Black's Law Dictionary said that they were the same, isn't that right? And the Supreme Court pointed that out. What the Supreme Court also pointed out was that by 1986, not 1989, although there were some references of using the less precise term, it was well enough understood by Congress, not just in the Senate report at issue in CERCLA, but by courts, commentators, other legislation that had been considered. We pointed out in our brief numerous instances where Congress considered statutes of repose. The point isn't whether or not they use the term statutes of repose in every piece of legislation. The point is they understood the difference. And so that when Congress uses the term statutes of limitations, CTS instructs that that's instructive. And here they could have used a different term. They also repeatedly referred to in FIREA, these statutes of limitations in the singular, which would be an awkward way to refer to different time periods with different purposes that run from different dates. They both apply, both CERCLA and FIREA apply to any action. And this argument that FIREA created a new exclusive time period for commencing an action, this very argument was actually rejected and made and rejected in CTS. Although it's true that the CERCLA statute refers to the state statutes of limitations and the FIREA statute doesn't explicitly refer to state statutes of limitations. They actually operate in exactly the same way. FIREA in D14A says that the statute of limitations is the period under state law, except when it's shorter. In that case, the federal period applies. CERCLA operates exactly the same way. They apply the state law statutes of limitations when it's longer and otherwise apply a new federal rule. In fact, one needs to only look at Justice Ginsburg's dissent, which looked at the fact that Congress under CERCLA created a federally required commencement date. And Justice Ginsburg said, well, that date should be deemed to displace all other time periods, whether statutes of limitations or statutes of repose. And the court rejected that argument. And as we pointed out in our brief, the respondents also pointed to the very same language, the references to any action and shall be, and argued that Congress didn't intend to carve out statutes of repose. The same language appears here and the Supreme Court in CTS rejected that argument. And even . . . What do you do with the positions that were referred to that have been taken by the Solicitor General in these various cases? I think it's very telling that the Solicitor General in the Department of Justice has not filed a brief in this case. I think it's very telling that the Solicitor General in the Department of Justice has not filed a brief in the Second Circuit or in the Ninth Circuit. And if they had filed a brief, we would very much like to hear how they would distinguish their position in the Federal Tort Claims Act context. Did they appear in Nomura, too, after CTS? I believe they did. And they took a position that was not only contrary to the position that the Department of Justice has always taken in that statutes of repose reflect the substantive state policy of the state and aren't displaced by statutes of limitations. They took a position that was contrary to their position in CTS. Now, if they were before this Court, we could respond to those arguments, but they have not filed a brief. And even if one were to accept that there were some differences between statutes, between CERCLA and FIREA, even though they both operate in precisely the same way, that still doesn't answer the question whether Congress intended to displace statutes of repose. That's something that counsel is asking this Court to read into the statute by implication, as if the statute said, notwithstanding any other state law, the time to commence an action with regard to an action brought by the FDIC as receiver shall be. That's not what this statute says. We know that Congress could have said that. That's exactly what Congress did in Section 108A of the Bankruptcy Code, which, curiously, the FDIC points to in their reply brief. And, in fact, this Court in Stanley v. Trincher, Judge Elrod, you were on that panel, looked at that language, where Congress said, notwithstanding any other non-bankruptcy law that fixes a period to commence an action, that displaces statutes of repose. And what this Court said was that, quote, Congress drew no distinctions among the state law vehicles that govern time limits for filing suit, whether statutes of limitations or prescription, repose or preemption. That's not what this statute says. Congress used far narrower and different language here. 1821d.14 says, notwithstanding any provision of any contract, the applicable statute of limitations shall be. The reference to statutes of limitations, as I pointed out, is instructive, as the Supreme Court held. And if Congress really intended to displace statutes of repose, it could have done so clearly. And not only wouldn't it have repeatedly referenced statutes of limitations rather than other language, and not only wouldn't it have referenced the period in the singular, and not only wouldn't it have incorporated concepts of accrual, which have no bearing on statutes of repose, but it also wouldn't have started the preemptive language with notwithstanding any provision of any contract. Instead, Congress would have said notwithstanding any other law or notwithstanding any other state or federal law. Indeed, 14 times throughout Section 1821 itself, Congress used precisely that language and said notwithstanding any other provision of federal law or the law of any state or notwithstanding any provision of law or notwithstanding any other provision of law in a particular subject matter. As the Supreme Court pointed out in Credit Suisse v. Simmons, sometimes the most glaring indication of Congress's intent is what a statute does not say. And the fact that Congress chose not to use the same broad preemptive language in this statute is glaring evidence in its telling. It's also not inconsistent, this language, with the purposes of FIREA and 1821d. As CPS pointed out, the intent and purpose of a statute, the best evidence still comes from the statute itself, from the plain language. And no legislation pursues its purposes at all costs. Here, did Congress give FIREA more time when it sues its receiver for contract and tort claims? It did. It extended the statutes of limitations when necessary when the period was longer than state law. I notice that your brief doesn't refer to the Summerlin case, and both Mr. Watson and Mr. Frederick relied substantially on that case. What is your response to that? I think it doesn't apply when the FDIC... Basically, Summerlin stands for the proposition that statutes of limitations are construed strictly against the sovereign. And here we argue that that principle has no application here because, first of all, the statute is not ambiguous and the presumption of strictly construing statute of limitations only applies in the case of an ambiguity. Number two, because when the FDIC sues its receiver, it's not the government, and O'Melveny makes that clear. And number three, even if that principle did apply, as Judge Falzer directly held in the countrywide decision, it's trumped by the presumption against preemption. But I'd like to get back to this question about the operation of state law and what Congress intended. It did intend to extend statutes of limitations, but Congress also understood that the scope of liability, the substantive law, was going to be defined entirely by reference to state law when it comes to contract and tort claims. In every respect, when Congress wanted to alter state law under FIREA, it was very specific, and it did so very specifically and very narrowly. The NCOA's amicus brief points out examples where Congress altered the FDIC's rights to repudiate a contract, for example. That's very specific. But when it comes to contract and tort claims that the FDIC brings as receiver, it steps in the shoes of the failed bank, and it has no greater rights. It doesn't have the right... In other words, while FIREA extends statutes of limitations, it doesn't give the FDIC the right to substantively change the scope of liability under state law. So if the FDIC's appointed receiver on a Friday afternoon, as often happens, and walks into the bank at 6 p.m. on Friday and shuts everything down and spends the weekend going through the files and trying to determine really what's going on, and the state period expires on a Sunday, the FDIC's just out of luck in terms of bringing any kind of an action. Is that the way it works? It depends on the policy judgment of the particular state. If there's a state that has a statute of repose that says we're going to allow a cause of action that extends for a further point in time, they're not out of luck. In this hypothetical, if the statute of repose had expired a day before receivership, there's no question here that there'd be no claim. It's just like under CERCLA. Congress understood what Congress wanted to do was give environmental tort plaintiffs more time to bring suits. There were some cases where the statutes of repose could cut off a claim even before the plaintiffs had even discovered their injury. And what the Supreme Court and CTS held was that's not a reason to preempt for federal preemption of statutes of repose. Now, the Texas statutes of repose in particular, there's been plenty written by this court in Burlington, by the Supreme Court, by the Texas courts, on the differences between statutes of repose and statutes of limitations. But the Texas statutes of repose under the TSA, the Texas Securities Act in particular, was a carefully negotiated compromise that was intended to balance the interests of investors and sellers. In other words, there was harsh liability that the Texas legislature said we're going to allow a plaintiff to bring a claim even without a showing of reliance, even without any showing of injury, even without any showing of scienter, but we're concerned about providing repose. What do you do about the Evans case that was referred to earlier? United States v. Evans. It's cited in the amicus brief, quoted as saying, quote, Somerlin does not differentiate between statute of limitation and statute of repose, and we find no reason to do so. Fifth Circuit, 2009. Again, when we're talking about firea, here's a statute that specifically addresses extension of statutes of limitations. And again, the Somerlin principle deals with presumptions in favor of the government, which we say just don't apply here. Essentially, what the Texas legislature said in TSA was that the requirement to bring will allow plaintiffs this very forgiving statute that allows them to plead a very forgiving cause of action without reliance, injury, without scienter, but only on the condition that we impose a five-year cutoff. That was the legislative judgment of the Texas legislature. In other words, the requirement to bring a claim within five years is very much an element of the claim itself as the need to prove that there was a misstatement. Now, the Federal Tort Claims Act cases we think are instructive. There's a statute where Congress provided a two-year federal statute of limitations, but otherwise the claims are defined by state law, just like CERCLA, just like firea. And this court in Smith v. United States, an unpublished decision, held that even if the plaintiff complies with that federal statute of limitations period, it doesn't override a Texas statute of repose. And virtually every court of appeals that has addressed this issue, the Fourth Circuit, the Sixth, the Seventh, and an en banc decision, the Eleventh Circuit, have all held that where Congress looks to state law to define the liability, statutes of repose are not preempted by a federal statute of limitations. And in the firea context, Judge Falzer also explained in this context that because Texas law defines the existence and the scope of the right that the FDIC had when it became receiver, and the Texas statute of repose substantively defines those rights, the FDIC would succeed to substantially different and greater rights than guaranteed bank had. And there's nothing about firea that shows that Congress intended that. It didn't. It would be inconsistent with every doctrine of preemption. It would be inconsistent with Texas law. It would be inconsistent with this court's cases. And there's a related point. I'd refer your honors to the analysis of Judge Sparks on the absence of a complete remedial scheme here. He was absolutely right. And CTS's decision and analysis on obstacle preemption was directly on point. What the Supreme Court said is that when Congress understands it's operating in an area of state law where there's an area of federal interest, Congress is assumed to have accepted whatever tension might exist between them and that the case for federal preemption is particularly weak. And so this is where the Supreme Court pointed out that under CERCLA, CERCLA leaves untouched states' judgments about the cause of action, the scope of liability, the duration of statute of limitations, the burdens of proof, and it held that in these circumstances where there's no complete remedial scheme, preemption is inappropriate. And this is precisely the situation here, your honors. FIREA also leaves untouched states' judgments about the cause of action, the scope of liability, the burdens of proof, the rules of evidence, even when it comes to the duration of the period of the statute of limitations, which the NCUA points out. Even that is untouched when it's longer. It's clear that Congress didn't create a new comprehensive remedial scheme. And so here, just like in CERCLA and CTS, because Congress understood that the scope of liability was defined by state law, the case for federal preemption is particularly weak, and it wasn't sufficient in CTS. There's no reason why it should be sufficient here. Judge Sparks addressed this issue correctly, and it completely forecloses any preemption argument. And so that leads us back to the textual tools that the Supreme Court held in CTS that courts should look to. It provided a road map. And all of that textual evidence points in the same direction here. The fact that Congress repeatedly used the term statute of limitations, the fact that it uses the term the period in statute of limitations in the singular, not to refer to multiple periods, and the reference to accrual concepts. The FDIC doesn't explain how this statute would work if it applied both the statute of limitations and statute to repose. For example, 1821d14b tells the court to look to the later of the appointment of the FDIC as receiver or the date on which the cause of action accrues. Well, there's no accrual period under statutes of repose. So what are courts to do, just ignore that or apply some other date? And subsection A says in the period of the statute of limitations shall be the three-year period or the period under state law. But statutes of repose and statutes of limitations have different periods that serve different purposes, that run from different dates. And how are courts supposed to deal with that if it applied to both? All of this is to say that Congress, if it really wanted to preempt statutes of repose, just like CTSL, this was an awkward way to do so. It's additional evidence that Congress didn't have that intent here. Mr. Frankel, your time is about to expire, but Mr. Watson got some extra time. You may have two more minutes if there's anything that you'd like to cover that you haven't. Don't just repeat yourself, but if you have anything new. I appreciate that, Your Honor. Let me just close by saying a couple of things. First of all, we do have the presumption against preemption here, and states have regulated interstate securities transactions under blue-sky laws like the Texas law for over a century under their historic police powers. Judge Smith, as you put it in the White Buffalo case, in that circumstance, unless Congress clearly and manifestly states what the federal law expressly preempts, then the tie goes to the state. And that principle applies here directly. They make this argument that because a majority of the Supreme Court in CTS didn't rely on the presumption against preemption, that it's somehow no longer good law. Well, that's just not true. As the Supreme Court in Bond v. U.S. in 2014 shows, it still commands a majority of this court, and it's still the law of this circuit under White Buffalo and other cases. What do you do when the Tenth Circuit's opinion says that the singular issue is different between CERCLA and FARIA? Because it's a circular argument. The argument, Your Honor, that because they refer to the statutes of limitations in the singular Congress intended, well, I would say a couple of things. First of all, when you compare side by side the way that CERCLA works with FARIA, they both do exactly the same thing. They both apply the statutes of limitations under state law when it's longer and a federal period when it's not. In practice, they operate the same way. And again, it really begs the question whether even if there's a difference between the use of the singular and the use of some other, and we say there's no difference, it really begs the question whether Congress intended to preempt, to create an exclusive new time period. And if that's what the FDIC is hanging its head on, that the fact that it uses the term the statutes of limitations to preempt an entire area of state law, that's just not a clear and manifest indication by Congress, and it shouldn't be accepted by this Court. All right. Thank you, Mr. Frankel. Thank you. Mr. Watson, you saved a very short time for rebuttal. Thank you, Your Honor. I did. I think it will be sufficient. I'm going to discuss a couple of points on rebuttal. The first is that my friend is fundamentally wrong about the statutory structure. He says that the statutory structure says, uses the words the shorter period and applies state law. It simply doesn't. It establishes the period, and it says that it will use state law if state law is longer. But there's no general provision whatsoever establishing that state law applies, which was the case in the CTS surplus statute. The second is that the repeated reference to the use of the word statute of limitations, CTS already answered that that is not dispositive and that it does include statutes of repose when Congress intends it to. So it doesn't have any effect. And this statute, the Texas statute that they rely on, doesn't use the word repose once. It says statute of limitations and then goes on to give those periods. The Sutherland decision involved a period of repose, and on page 27 of our reply brief, we have other cases, and we can supplement if the courts want. But the general rule in Sutherland that when the government comes into a claim that the state statutes cease to apply is well established in Summerlin and is the law of this circuit, United States v. Sellers, which I quoted earlier, 487 F. 2nd of 1268, state statutes simply cease to apply. And as for this distinction between repose and limitations, the Evans decision and this Court's decision in Stonehenge regarding this statute, which is admittedly unpublished, but they explained that there is no reason to distinguish between statutes of repose and limitations, and in a decision that was authored by Farmer's Home Administration v. Muirhead at 42 F. 3rd, 964, Judge Jones— Your time has expired now, Mr. Watson. Thank you, Your Honor. Your case is under submission. Thank you. Last case for today.